IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **FREDERICA STOWERS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-02083-TLP-atc |
| ) | |
| **SHELBY COUNTY SCHOOLS,** ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING MOTION TO EXTEND DEADLINE AND
REPORT AND RECOMMENDATION TO GRANT SUMMARY JUDGMENT**

Before the Court is Defendant Shelby County Schools's ("SCS") Motion for Summary Judgment, filed on April 17, 2023.[1] (ECF Nos. 36, 37.) On April 18, 2023, SCS filed a corrected version of the Motion for Summary Judgment and documents in support (ECF Nos. 38, 39, 42, 43), along with a motion to extend the dispositive motion deadline by one day. (ECF No. 40.) Plaintiff Frederica Stowers submitted a single response to SCS's corrected Motion for Summary Judgment and the motion to extend the dispositive motion deadline on April 26, 2023. (ECF No. 44.) SCS filed a Reply in further support of its corrected Motion for Summary Judgment on May 11, 2023. (ECF No. 46.)

For the following reasons, it is recommended that summary judgment be granted in favor of SCS and that Stowers's remaining claim be dismissed.

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

**PROPOSED FINDINGS OF FACT**

**I.       Procedural History and Motion to Extend Dispositive Motion Deadline**

On February 4, 2021, Stowers filed a *pro se* complaint against Defendants SCS, Joris Ray, William Johnson, Tara Hunter, Anthony Krone, Barbara Deloach, and "Dr. Strong." (ECF No. 1.) Stowers's complaint alleges claims for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* (the "ADA"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"); "Unfair Labor Practices"; and "Workers Compensation." (*Id.* at 4.) Stowers alleges that she was discriminated against when she was "forced to retire [from her job with SCS] due to disability from work related injury [due to] no fault of [her] own." (*Id.* at 5.) Stowers further alleges that she was discriminated against based on her disability, which includes "chronic PTSD, anxiety, depression, elevated blood pressure, panic attacks, memory loss, and exacerbated IBS-anxiety." (*Id.*)

On November 3, 2021, this Court entered a Report and Recommendation for Partial Sua Sponte Dismissal and to Issue Process for the Remaining Defendant ("R&R"), pursuant to 28 U.S.C. § 1915(e)(2)(B). (ECF No. 10.) The R&R recommended dismissal of all claims against the five individually named Defendants and dismissal of Stowers's claims for violations of the ADEA, unfair labor practices, and workers compensation against SCS for failure to state a claim upon which relief may be granted. (*Id.* at 11.) The R&R further recommended that process issue as to SCS, as Stowers adequately pled a claim for constructive wrongful termination under the ADA against SCS. (*Id.* at 7–8.) On June 30, 2022, District Judge Thomas L. Parker adopted the R&R in full and ordered that all Stowers's claims, except for her wrongful termination claim against SCS, were dismissed and that process should issue as to SCS. (ECF No. 13.) SCS appeared and answered the complaint on August 8, 2022. (ECF No. 17.)

The Scheduling Order in this case set April 17, 2023, as the deadline for filing dispositive motions.  (ECF No. 20, at 2.)  SCS timely filed its original Motion for Summary Judgment on April 17, 2023.  (ECF Nos. 36, 37.)  The next day, April 18, SCS filed its corrected Motion for Summary Judgment.  (ECF Nos. 38, 39, 42, 43.)  In its motion requesting an extension of the dispositive motion deadline by one day, SCS states that it neglected to upload all of its supporting documents when filing the original Motion for Summary Judgment and that one of its witnesses was unexpectedly unavailable to sign her declaration on April 17th.  (ECF No. 40, at 2–3; ECF No. 41-1, at 1–2.)  SCS argues that its failure to timely file all its summary judgment submissions by April 17th was the result of excusable neglect.  (ECF. No 40, at 2–3.)  In her Response, Stowers merely states that SCS "must comply with scheduling orders" but does not substantively contest any of SCS's factual contentions or legal arguments in support of extending the deadline by one day.  (ECF No. 44, at 1.)

Extensions of time after a deadline has expired are governed by Federal Rule of Civil Procedure 6(b)(1)(B) and require a showing of excusable neglect.  Courts consider five factors when determining whether excusable neglect has been shown: "(1) whether prejudice would result to the non-moving party; (2) the length and impact of the delay on the judicial proceedings; (3) the reason for the delay; (4) whether the delay was in the control of the moving party; and (5) whether the moving party has acted in good faith."  *Hess Corp. v. Precision Powder Coating, Inc.*, No. 5:09-cv-1304, 2009 WL 2430888, at *1 (N.D. Ohio Aug. 6, 2009) (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)).  Here, the first factor weighs heavily in favor of granting the extension, as Stowers has not shown any prejudice from the extension.  The second factor does as well, as extending the dispositive motion deadline by one day does not impact these proceedings.  The delay was certainly within the control of

SCS, and its reasons for the delay are not especially compelling—the unexpected unavailability of a witness on the last day to file and general issues with uploading documents to ECF in the late evening of April 17th—such that the third and fourth factors weigh against granting the extension. The fifth factor weighs in favor of an extension as there is no indication that SCS acted without good faith. Considering these factors and the totality of the circumstances, the Court finds that SCS has shown sufficient excusable neglect to justify a one-day extension of the dispositive motion deadline, and the motion (ECF No. 40) is therefore GRANTED. *See Hess*, 2009 WL 2430888, at *1–2 (granting extension of time to file an answer when "[t]he delay in this matter was less than one day," even though "generally a busy office schedule does not constitute excusable neglect").

Based on this ruling, the Court recommends that SCS's original Motion for Summary Judgment (ECF Nos. 36, 37) be denied as moot. The Court will refer exclusively to SCS's corrected Motion for Summary Judgment (ECF Nos. 38, 39, 42, 43) ("the Motion") for the remainder of this Report and Recommendation.

**II.    Undisputed Material Facts**

As a threshold matter, the Court must address which facts are undisputed for purposes of ruling on the Motion. Contemporaneous with its Motion, SCS filed a statement of seventy undisputed material facts. (ECF No. 41-1.) SCS's facts are supported by the transcript and exhibits from Stowers's deposition (ECF Nos. 42-3 to 42-14); the declaration of Andrea R. Williams, SCS's Senior Advisor of Instructional Staffing (ECF No. 42-15); the declaration of Jeri Rudolph, SCS's Risk Management Advisor (ECF No. 42-16); and a sealed social security decision dated January 21, 2021 (ECF No. 43).

In her Response (ECF No. 44), Stowers fails to substantively address any of the legal arguments put forth in the Motion regarding her ADA wrongful termination claim, and she fails to cite any facts or evidence in the Record to refute the facts submitted by SCS. Stowers also does not identify by number which of SCS's facts she takes issue with; instead, she generally argues that she should be entitled to a trial, that SCS has not produced the documents that she requested, and that a handful of the facts offered by SCS are incorrect. (*Id.* at 2–5.) Notably, Stowers's Response is unsigned and unsworn, she provides no factual statements that could be considered admissible evidence, and the only documents she attaches or even specifically references consist of two photos of Stowers during a hospitalization on June 6, 2019. (ECF No. 44-1.)

SCS's Reply addresses Stowers's failure to cite any relevant evidence in the Record, to adequately raise any genuine issues of fact as to her ADA claim, or to address its legal arguments. (ECF No. 46.)

Based on the Record before the Court, Stowers has failed to dispute SCS's statement of undisputed material facts. Stowers does not address the vast majority of SCS's facts, and, for the few that she does address, she offers no citations to the Record to support her contentions and only limited and vague, unsworn arguments. (ECF No. 44, at 2–5.) Such responses are legally insufficient under Local Rule 56.1(b), which requires that "[e]ach disputed fact must be supported by specific citation to the record." Because Stowers has failed to properly dispute any of the facts presented in SCS's summary judgment submissions, those facts are all deemed undisputed for purposes of summary judgment. *See Elvis Presley Enter. v. City of Memphis, Tenn.*, No. 2:18-cv-2718-SHM-atc, 2020 WL 6163564, at *3 (W.D. Tenn. Oct. 21, 2020) (explaining that, when responding to a properly supported summary judgment motion, "[t]he

non-moving party has the duty to point out specific evidence sufficient to justify a jury decision in its favor") (citing Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."); *Jones v. Mayble*, 2:18-cv-02875-TLP-tmp, 2021 WL 1951171, at *2 (W.D. Tenn. May 14, 2021) (quoting *Garrett v. Mich. Dep't of Corr.*, No. 3:18-cv-12844, 2020 WL 5223800, at *5 (E.D. Mich. July 13, 2020)) ("[W]hen opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and . . . a party's status as a pro se litigant does not alter this duty on a summary judgment motion."); *Sanders v. Baptist Mem'l Hosp.*, No. 14-CV-2414-SHL-tmp, 2015 WL 5797607, at *1 (W.D. Tenn. Aug. 19, 2015), *report and recommendation adopted*, 2015 WL 5797618 (W.D. Tenn. Oct. 1, 2015), *aff'd*, No. 15-6136 (6th Cir. Apr. 11, 2016) (collecting cases in which courts in this district deemed as undisputed facts that plaintiffs failed to respond to consistent with Local Rule 56.1(b)).

Stowers's assertions regarding allegedly incomplete discovery do not disturb this conclusion. (ECF No. 44, at 2.) Discovery in this case closed on March 17, 2023, and the time for Stowers to gather information to refute SCS's summary judgment proof has long since passed. (ECF No. 20.) Stowers served her discovery requests on SCS on February 27, 2023 (ECF Nos. 33 & 34), nearly a month after the deadline to do so expired on January 31, 2023 (ECF No. 20, at 2). She never filed a motion to extend the written discovery deadline or a motion to compel discovery responses. Her arguments regarding unproduced discovery are therefore ineffectual in bringing any of SCS's facts into dispute. *See Baxter Bailey Invs., Inc. v. Mars Petcare US, Inc.*, No. 11-cv-2860-STA-dkv, 2012 WL 1965612, at *1 n.1, *2–3 (W.D.

Tenn. May 31, 2012) (denying the plaintiff's motion for additional discovery and deeming certain facts admitted for purposes of summary judgment when the plaintiff claimed he lacked sufficient information to respond but discovery had closed); *Dodd v. Chrysler Grp. LLC*, No. 1:11-cv-01073-JDB, 2012 WL 1565640, at *2 n.2–3 (W.D. Tenn. May 1, 2012) (deeming certain facts admitted for the purposes of summary judgment after the plaintiff asserted that he was "without sufficient information to admit or deny" them); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 747 n.13 (M.D. Tenn. 2019), *case dismissed*, No. 19-5369, 2019 WL 5079251 (6th Cir. Sept. 18, 2019) (accepting as undisputed those facts that were objectively verifiable, despite the plaintiff's assertion that he lacked sufficient information to assess their truth but made no attempt to offer contrary evidence).

Stowers also tries to resist summary judgment by describing categories of evidence she hopes to rely on. For example, she argues that she should be permitted to put on evidence of her strong work performance history: "I'm a dedicated professional that rarely miss[es] days from work. I come to work even when I'm sick." (ECF No. 44, at 2.) Stowers also argues that three of her treating physicians and two SCS risk management employees would testify at trial as to the severity of her on-the-job injury and her resulting medical conditions. (*Id.* at 4.) Neither category of evidence, however, creates a dispute material fact. First, Stowers has not submitted any sworn statements or records from these potential witnesses in opposition to the Motion, and the time for her to do so has long since passed.[2] *See, e.g.*, *Elvis Presley Enter.*, 2020 WL 6163564, at *3; *Mayble*, 2021 WL 1951171, at *2; *Sanders*, 2015 WL 5797607, at *1. Second, this evidence does not relate to an issue in dispute. SCS does not contest that Stowers was a

---

[2] In addition, as to the physicians, who Stowers asserts will testify as experts (*id.*), the deadline for disclosing expert testimony was January 17, 2023, and SCS maintains that Stowers has disclosed no experts in this case (ECF No. 46, at 6).

good employee and does not dispute, for purposes of summary judgment, that she suffered a serious on-the-job injury or is disabled as a result of her medical conditions. This evidence is simply not relevant to the issues before the Court on summary judgment.

Given the foregoing, the Court finds the following facts are undisputed for purposes of summary judgment:[3]

From 2007 through 2018, Stowers held various teaching positions with SCS, including Classroom Teacher in both elementary and middle school settings. (ECF No. 42-1 ¶ 1.) Prior to 2007, Stowers worked as a teacher's assistant and teacher in Mississippi since 1994. (*Id.* ¶ 2.) For the 2018–19 school year, Stowers applied for and was assigned to a Science Teacher role at Woodstock Middle School. (*Id.* ¶¶ 5–7.)

Stowers was familiar with and had access to the SCS employee handbook. (*Id.* ¶ 8.) SCS Board Policy 4016 sets out the process for seeking employment, including lateral transfers, with SCS. (*Id.* ¶ 9.) All employment vacancies and new positions are publicly posted. (*Id.* ¶ 10.) Anyone seeking a position with SCS must submit an application to the Superintendent. (*Id.* ¶ 9.) Stowers never submitted an application for any other open position with SCS after her on-the-job injury in December of 2018. (*Id.*)

Essential functions of a Classroom Teacher include direct contact with students and public speaking. (*Id.* ¶ 11.) According to Stowers, her job duties as a Science Teacher at Woodstock Middle School included the preparation and presentation of lessons to students and assessment of student performance data. (*Id.* ¶ 12.) Her duties also included classroom

---

[3] As discussed above, Stowers has failed to adequately bring any facts relevant to summary judgment into dispute. However, the Court will note below the few instances where Stowers does address SCS's facts in her unsworn and unsupported response. The paragraphs below that are not footnoted are unaddressed in Stowers's Response.

management and monitoring student conduct in the cafeteria, the hallways, and on school property.  (*Id.*)

On December 12, 2018, Stowers was injured when a student put a substance that may have been hand sanitizer in her beverage, which she drank.  (*Id.* ¶ 13.)  Stowers submitted a claim for benefits under the SCS Accident on the Job Benefits Program ("OJI Benefits") for that injury, which was approved.  (*Id.* ¶¶ 14, 15.)  SCS's OJI Benefits Policy applies to all permanent employees who sustain an injury, illness, or disability resulting from an incident arising out of and in the course of employment.  (*Id.* ¶ 17.)  Benefits include lost wages if an employee is not able to return to work.  (*Id.* ¶ 18.)  During the first two months of absence from work, the employee receives 100% of their base salary.  (*Id.*)  After the second month of absence, the employee receives 50% of their base salary for the remaining period of absence up to one year.  (*Id.*)

OJI Benefits also include medical expenses.  (*Id.* ¶ 19.)  SCS pays for necessary and reasonable medical expenses for an on-the-job injury sustained by an employee.  (*Id.*)  Unless otherwise approved by SCS, no medical expenses are paid for any on-the-job injury after one year.  (*Id.*)  SCS provides full salary benefits for teachers injured in the course of their employment by a violent criminal act under SCS Board Policy 4014.  (*Id.* ¶ 20.)

Stowers received OJI Benefits from December 2018 until her retirement in January 2020.  (*Id.* ¶¶ 21, 66–67.)  She submitted a Leave of Absence Request Form on January 21, 2019, which was approved for the initial period of December 12, 2018, to June 12, 2019.  (*Id.* ¶¶ 22–24.)  On January 2, 2019, one of her medical providers released her to return to work.  (*Id.* ¶ 26.)  But, as of January 22, 2019, Stowers believed she was still unable to return to her

9

teaching position, and she was adamant that she required additional medical treatment. (*Id.* ¶ 27.)

Stowers's OJI Benefits continued beyond January 2019, and Stowers continued to receive medical treatment for her conditions. (*Id.* ¶ 28.) Stowers expressed concerns to SCS regarding its coverage of that treatment. (*Id.* ¶ 29.) On April 8, 2019, she informed SCS that she was still unable to return to her teaching position and felt that she was being "bounced around from doctor to doctor to get me back to work as fast as possible." (*Id.* ¶ 31.) She was concerned with some of her OJI Benefits providers' belief that she could return to work, as she still believed that she was unable to return to her teaching position. (*Id.* ¶¶ 32–33.)

In May 2019, Stowers requested an extension of her Leave of Absence. (*Id.* ¶ 36.) She received a letter from SCS advising her that her Leave of Absence was extended for the period of June 12, 2019, to December 12, 2019, and laying out her options if she could not return to work—resignation, retirement, or disability retirement. (*Id.* ¶ 37.) The letter also advised Stowers that a reasonable accommodation would be provided to enable her to return to work if necessary. (*Id.*)[4] During her deposition, Stowers stated that she reviewed those options. (*Id.* ¶ 39.)

On July 15, 2019, Stowers informed SCS that she was unable to return to work and was in the process of filing for disability. (*Id.* ¶¶ 40–41.) Stowers was ultimately found disabled and approved for benefits by the Social Security Administration. (*Id.* ¶ 42.) Meanwhile, Stowers continued to receive medical treatment and paid leave from SCS. (*Id.* ¶¶ 43–44.) On October

---

[4] In her Response, Stowers states that "[t]he conversation regarding accommodations never took place—prior to them sending me the option to retirement disability." (ECF No. 44, at 2.) Stowers's unsworn and unsupported statement, even if it could be considered on summary judgment, does not bring this fact into dispute, as it appears to conform with this fact.

10

15, 2019, Stowers communicated her frustration to SCS that her OJI Benefits only lasted one year and asked about "special circumstances" for extending OJI Benefits for teachers assaulted at work who are unable to return to work. (*Id.* ¶¶ 46, 47.)[5]

On October 22, 2019, Stowers's psychotherapy provider, Margarite Rogers, submitted a "Patient Progress Report" to SCS, which stated that Stowers was incapable of "being in direct contact with children, adolescents, and/or teens" and that her "ability to return as an educator at present, in my clinical opinion, is not advisable." (ECF No. 41-1 ¶ 49.) The Patient Progress Report also included the following recommended accommodations under the ADA: "no direct contact with children, adolescents, and/or teens," "close proximity to restrooms," and "intermittent leave when there is a flare-up of symptoms both psychological and medical." (*Id.* ¶ 50.) In her deposition, Stowers agreed with Rogers's opinions in the Patient Progress Report. (*Id.* ¶ 51.)

Stowers continued to question SCS about the possibility to extend OJI Benefits beyond one year. (*Id.* ¶ 52.) However, Stowers's request in October 2019 for an extension beyond the one year of OJI Benefits was denied at that time. (*Id.* ¶ 54.) In these communications, Stowers expressed that she was not prepared to return to her teaching position until released to work by her doctors, and she did not provide an expected date of return to work. (*Id.* ¶ 53.) She also discussed the possibility of returning to work in a non-teaching role. (*Id.* ¶ 55.) But the only lateral positions for a Classroom Teacher are Librarian, Interventionist, and Professional Counselor, and each of these positions requires direct contact with students. (*Id.* ¶ 56.) Stowers

---

[5] In her Response, Stowers appears to comment on the facts in this paragraph, though her comments are unclear. (ECF No. 44, at 2–3.) However, as discussed above, her unsupported and unsworn contentions are legally insufficient to bring these facts into dispute. Even if they could be considered, Stowers's comments consist primarily of generalized complaints of unfairness and mental health problems, such that she has not refuted the facts in this paragraph.

11

did not identify or apply for any position that she believed she was qualified to perform. (*Id.* ¶¶ 57–58.) In her deposition, Stowers testified that she considered a secretarial role, but secretary positions also require contact with students. (*Id.* ¶¶ 59–60.)

In November 2019, Stowers submitted her Application for Disability Retirement Benefits to the Tennessee Consolidated Retirement System ("TCRS"), in which she certified under penalty of perjury that she was "incapacitated from further service." (*Id.* ¶¶ 62–63.) In that application, Stowers's medical provider opined that her impairment was expected to continue for at least twelve months, prevented past work, and prevents engagement in all other gainful activity, including public speaking and exposure to large crowds. (*Id.* ¶ 64.) Stowers's TCRS benefits were approved on January 15, 2020, and her Social Security disability benefits were approved on January 21, 2021. (*Id.* ¶¶ 68–69.) Since Stowers's on-the-job injury on December 12, 2018, she has not communicated a return-to-work date to SCS. (*Id.* ¶ 70.)[6]

## PROPOSED CONCLUSIONS OF LAW

### I.   Legal Standard for Summary Judgment

Courts evaluate motions for summary judgment under Federal Rule of Civil Procedure 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Harper v. City of Cleveland*, 781 F. App'x 389, 392 (6th Cir. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Thus, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

---

[6] In her Response, Stowers addresses her communications with SCS in November 2019. (ECF No. 44, at 3–4.) However, she does not dispute SCS's facts or their underlying support in the Record. Rather, Stowers attempts to explain why she took certain actions, including why she made renewed requests for extending her Leave of Absence and why she applied for retirement disability benefits. These statements do not contradict the facts as asserted by SCS, and in any event, Stowers's unsworn and unsupported assertions are procedurally ineffective at the summary judgment stage.

12

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.") (quoting *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014)). "A material fact is one 'that might affect the outcome of the suit,' and a genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the burden of showing that no genuine issues of material fact exist." *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 302 (6th Cir. 2018) (citing *Celotex*, 477 U.S. at 324).

In evaluating summary judgment motions, a court must "draw all reasonable inferences in favor of the nonmoving party." *Harper*, 781 F. App'x at 392 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Nevertheless, "[t]he nonmoving party must do more than simply 'show that there is some metaphysical doubt as to the material facts.'" *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 652 (W.D. Tenn. 2020) (quoting *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018)). A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation, or unsubstantiated assertions. *Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). In determining whether a dispute of material fact exists, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). At the same time, "[a] district court is not required to search the entire record to establish that it is bereft of a genuine issue of

13

material fact," as "judges are not like pigs, hunting for truffles that might be buried in the record." *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (citations, quotations, and alterations omitted).

"Although summary judgment must be used carefully, it 'is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut.'" *Stevens-Bratton*, 437 F. Supp. 3d at 652 (quoting *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009)). Ultimately, "[w]hen the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law, and summary judgment is proper." *Peterson v. Medtronic, Inc.*, No. 2:17-cv-02457-MSN-atc, 2020 WL 6999225, at *4 (W.D. Tenn. Sept. 30, 2020) (quoting *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013)). "These standards apply regardless of a party's *pro se* status; the liberal pleading standard for *pro se* parties is inapplicable once a case has progressed to the summary judgment stage." *Almasri v. Valero Ref. Co. – Tenn., LLC*, No. 2:20-cv-02863-SHL-tmp, 2022 WL 895732, at *3 (W.D. Tenn. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 891842 (W.D. Tenn. Mar. 25, 2022) (citations and internal quotations omitted); *see also Jones*, 2021 WL 1951171, at *2 ("Just because Plaintiff is pro se does not alter his obligations under Rule 56. Rather, 'liberal treatment of pro se pleadings does not require lenient treatment of substantive law.'" (quoting *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006))).

**II.    Stowers's ADA Wrongful Termination Claim Against SCS**

As explained in the R&R, the Court construes Stowers's claim that she was forced to retire due to her disability as one of constructive wrongful termination under the ADA. *See, e.g.*,

*Marshall v. Wayne Cnty.*, No. 19-cv-12515, 2020 WL 5505382, at *3 (E.D. Mich. Sept. 11, 2020) (construing the plaintiff's claim that he was forced to retire as a constructive wrongful termination claim). To establish a claim for wrongful termination, Stowers must show: "(1) she has a disability, (2) she is 'otherwise qualified for the position, with or without reasonable accommodation,' (3) she 'suffered an adverse employment decision,' (4) her employer 'knew or had reason to know' of her disability, and (5) she was replaced or her position remained open." *Williams*, 847 F.3d at 395 (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)). SCS argues that Stowers cannot establish a *prima facie* case under the ADA for wrongful termination because she cannot satisfy the second and third elements. (ECF No. 42-2, at 6.)[7] In her Response, Stowers does not directly address these arguments; instead, she generally asserts that she is entitled to a trial due to SCS's alleged unfair treatment of her relating to her medical conditions. (ECF No. 44, at 2–5.)

    A.    <u>Qualification for the position, with or without accommodation</u>

Stowers has failed to show that she is qualified for her previous position as a Classroom Teacher, with or without a reasonable accommodation. It is undisputed that direct interaction with students is an essential function of being a Classroom Teacher, that Stowers is not able to have direct contact with students, and that Stowers has been unable to return to work as a teacher since her on-the-job injury on December 12, 2018. (ECF No. 42-1 ¶¶ 11–13, 25–31, 38–42, 49–51, 70.) "To be 'otherwise qualified' for the job, the employee bears the burden of showing she

---

[7] Because SCS argues that Stowers has failed to meet her initial burden of establishing a *prima facie* case for discrimination, it does not address the additional steps under the *McDonnell Douglas* burden-shifting framework. As such, the Court will likewise only address the first step. *See Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (declining to address the other steps under the *McDonnell Douglas* framework when the plaintiff failed to carry her *prima facie* burden at the first step).

15

can perform the 'essential functions' of the job, with or without accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011) (quoting 42 U.S.C. § 12111(8); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004)). "The employee also bears the burden of proposing reasonable accommodations." *Tompkins-Wells v. Shelby Cnty Head Start*, No. 2:12-cv-03035-JTF-dkv, 2015 WL 1345254, at *13 (W.D. Tenn. Mar. 23, 2015) (quoting *Tubbs v. Formica Corp.*, 107 F. App'x 485, 488 (6th Cir. 2004)). "If the employer claims that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation." *Id.* (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996)). "In other words, if the employee fails to create a genuine dispute of material fact that a reasonable accommodation would have allowed her to perform the essential functions of her job, she cannot survive summary judgment." *Williams*, 847 F.3d at 395.

Here, Stowers has not shown that she can perform the essential functions of the job of Classroom Teacher, with or without accommodation. There is no indication in the Record that she ever requested any accommodation that would allow her to return to teaching students in a classroom. Rather, it is undisputed that she is unable to return to work, at least as recently as November 2019, when she claimed to be "incapacitated from further service" in her TCRS application. (ECF No. 42-1 ¶¶ 62–63.) Stowers's claim for disability is thus inconsistent with her current position that she is qualified for her former position with or without reasonable accommodation. Though such inconsistency is not conclusive as a matter of law, "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland v. Policy Mgmt.*

16

*Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Childers v. Hardeman Cnty. Bd. of Educ.*, No. 1:13-cv-01209-JDB, 2015 WL 225058, at *13 (W.D. Tenn. Jan. 15, 2015) (finding that an ADA plaintiff—who applied for and received social security disability benefits—provided a sufficient explanation at the summary judgment stage to explain the "contradiction" between disability benefits and the elements of her ADA claim: her social security disability claim involved an injury unrelated to her ADA claim, and she testified that, "had she been given a reasonable accommodation by Defendant, she could have continued the essential functions of her job"). Stowers has offered no explanation for the contradiction between her disability retirement benefits application and her ADA claim. She has not alleged or shown that she can perform the essential functions of her job; rather, it is undisputed that she cannot, with or without reasonable accommodations.

It is also undisputed that Stowers never applied for another position with SCS and that, even if she had, she is not qualified for the available lateral positions outside the classroom because she is unable to interact directly with students. (*Id.* ¶¶ 55–61.) Stowers does not identify a position with SCS that she is qualified for, with or without accommodation, and it is undisputed that she did not propose or apply for a specific alternative position with SCS. (*Id.*) "[A]lthough employers have a duty to locate suitable positions for disabled employees, such employees may not recover unless they propose, or apply for, particular alternative positions for which they are qualified." *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 258 (6th Cir. 2022); *see also Sharif-Mitchell v. Memphis, Light, Gas & Water*, No. No. 2:20-cv-02400, 2023 WL 2724240, at *10 (W.D. Tenn. Mar. 30, 2023) (holding that "employers are not required to create new positions" or "convert a temporary position for recuperating employees to a permanent position" under the ADA) (citations omitted).

17

Essentially, Stowers appears to argue that she was entitled to an indefinite leave of absence due to her medical conditions following her on-the-job injury on December 18, 2018. However, that relief is not required under the ADA. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000) ("[W]hen the requested accommodation has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide."). Stowers has failed to carry her burden of showing a genuine issue of material fact on the issue of whether she was qualified, with or without an accommodation, such that her ADA wrongful termination claim should be dismissed.

B. Adverse employment action

Stowers has also failed to show that she suffered an adverse employment action. It is undisputed that, on July 15, 2019, Stowers informed SCS that she was unable to return to work and was in the process of filing for disability because she believed that she was not able to return to work. (ECF No. 42-1 ¶¶ 40–41.) In November 2019, Stowers submitted her TCRS application, in which she certified under penalty of perjury that she was "incapacitated from further service." (*Id.* ¶¶ 62–63.) In that application, Stowers's medical provider opined that her impairment was expected to continue for at least twelve months, that her impairment prevented past work, and that her impairment prevents engagement in all other gainful activity, including public speaking and exposure to large crowds. (*Id.* ¶ 64.) Stowers's TCRS benefits were approved on January 15, 2020, and her Social Security disability benefits were approved on January 21, 2021. (*Id.* ¶¶ 68–69.)

Although Stowers alleges she was forced to retire, the undisputed facts before the Court reflect that she voluntarily retired because she could no longer work, as reflected in her applications for retirement and social security benefits. "When an employee retires, his

18

retirement is 'presumed to be voluntary.'" *Hargett v. Jefferson Cnty Bd. of Educ.*, No. 3:14-cv-00869-CRS-chl, 2017 WL 939326, at *9 (W.D. Ky. Mar. 9, 2017) (quoting *Nunn v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004)). Stowers has not provided any evidence or other support for her unsworn allegation that she was forced to retire, she has not overcome the presumption that her retirement was voluntary, and, "[g]iven that the evidence does not support a finding that [the plaintiff] was constructively discharged, her allegedly 'forced retirement' was not an adverse employment action." *Id.* As a result, Stowers has failed to carry her burden of showing a genuine issue of material fact on the issue of whether she suffered an adverse employment action, such that her ADA wrongful termination claim should be dismissed.

## **RECOMMENDATION**

For the foregoing reasons, the motion to extend the dispositive motion deadline is GRANTED. The Court further recommends that SCS's original Motion for Summary Judgment be denied as moot, that SCS's corrected Motion for Summary Judgment be granted in its entirety, and that judgment be entered in Defendants' favor.

Respectfully submitted this 6th day of October, 2023.

                              s/Annie T. Christoff
                              ANNIE T. CHRISTOFF
                              UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.